NEM:RWN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

UNITED STATES OF AMERICA

    - against -

LEANDRO ALLEYNE
and FABIAN INNISS,

              Defendants.

------------------------------X

C O M P L A I N T

(21 U.S.C. §§ 952(b) and 960; 18 U.S.C. § 2)

No. 24-MJ-542

EASTERN DISTRICT OF NEW YORK, SS:

        PEDRO DE LOS SANTOS, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

        On or about September 18, 2024, within the Eastern District of New York and elsewhere, the defendants LEANDRO ALLEYNE and FABIAN INNISS, together with others, did knowingly and intentionally import one or more controlled substances into the United States from a place outside thereof, which offense involved a substance containing ketamine, a Schedule III controlled substance.

        (Title 21, United States Code, Sections 952(b) and 960; Title 18, United States Code, Section 2)

        The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to

1.	I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been involved in the investigation of numerous cases involving drug trafficking, including those involving the trafficking of ketamine. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation.

2.	At all times relevant to this Complaint, LEANDRO ALLEYNE and FABIAN INNISS were employed by Delta Airlines as ramp agents.

3.	On or about September 18, 2024, at approximately 5:00 p.m., two individuals ("Individual-1" and "Individual-2") arrived at gate B33 in Terminal 4 of John F. Kennedy International Airport ("JFK") in Queens, New York aboard Delta Flight 219 from Copenhagen, Denmark.

4.	Delta records indicate that Individual-1 checked three bags weighing approximately 13 kilograms, 15 kilograms, and 22 kilograms, respectively and that Individual-2 checked two bags weighing approximately 23 kilograms and 22 kilograms, respectively.

5.	Upon the arrival of Delta Flight 219 at Gate B33 at JFK, HSI agents observed the defendants ALLEYNE and INNISS approach Flight 219, each operating a baggage transportation vehicle. ALLEYNE was not scheduled to begin his work shift until 6:00 p.m. ALLEYNE was assigned to work in the bag room inside JFK, and his duties for that shift did not include driving a baggage transportation vehicle.

6.	HSI agents observed INNISS offload checked luggage from Flight 219

---

establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

onto his vehicle, after which ALLEYNE and INNISS drove their vehicles to an area on the tarmac between gates 22 and 24 at Terminal 4.

7.      At that area, a Delta employee observed INNISS and ALLEYNE park their vehicles, and video surveillance depicts INNISS removing several of the suitcases from Flight 219 from his vehicle and placing them on a baggage cart attached to ALLEYNE's vehicle. A Delta employee then observed ALLEYNE open one of the suitcases.  I am advised by personnel with Delta that there is no legitimate reason for INNISS and ALLEYNE to transport baggage to this area or remove the contents of any checked bag in this area.

8.      HSI agents subsequently approached and observed INNISS driving his vehicle away.  HSI agents observed ALLEYNE seated in the driver's seat of a vehicle connected to the aforementioned baggage cart, and observed on the baggage cart, among other items of luggage, four suitcases (the "Suitcases") with luggage tags and four backpacks without luggage tags.  Two of the Suitcases bore luggage tags with the name of Individual-1, and two of the Suitcases bore luggage tags with the name of Individual-2.  Upon opening the Suitcases, HSI agents observed that each Suitcase contained a small amount of clothing, and each Suitcase weighed significantly less than the weight listed on their flight records.

9.      Each backpack weighed between approximately 16 and 17 kilograms. Upon opening the backpacks, HSI agents observed that each backpack contained multiple clear plastic bags containing a white crystalized substance.  A photograph of one backpack and its contents is shown below:

4



10. Field tests confirmed that the substance in each backpack was ketamine. The total approximate weight of the ketamine in the four backpacks was 60.7 kilograms.

11. HSI agents subsequently gave defendant FABIAN INNISS <u>Miranda</u> warnings, which defendant INNISS waived, and interviewed him concerning the packages.

12. In sum and substance, defendant FABIAN INNISS stated during his interview that he took suitcases containing backpacks and handed them to ALLEYNE. INNISS admitted he has done this at least 5 to 10 times in the past with ALLEYNE, and that he knew the bags contained drugs based on conversations with ALLEYNE, but did not know the type of drug. INNISS stated that on prior occasions, he has taken backpacks containing drugs out of the airport to ALLEYENE's Tesla Sedan in the Delta employee parking lot. INNISS stated he is paid approximately $4,000 to $5,000 per flight.

13. HSI agents placed the defendants under arrest.

WHEREFORE, your deponent respectfully requests that the defendants LEANDRO ALLEYNE and FABIAN INNISS be dealt with according to law.

*[signature]*
PEDRO DE LOS SANTOS
Special Agent
United States Department of Homeland Security,
Homeland Security Investigations

Sworn to before me this
19th day of September, 2024

_____
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK